4th Caseholder Doctrines 2-18-0897 Catherine Durr and Kim Olsener, individually and as co-trustees of the Erle-Durr Revocable Million Trust No. 13310 Warren Durr, James E. Durr, and Michael C. Durr, plaintiffs' appellants The Gwynne A. Weyer and Nicolette Weyer, defendants' attorneys arguing on behalf of the plaintiffs' appellants, Ms. Jessica and Carson arguing on behalf of the defendants' attorneys, Mr. Daniel and Kevin Summers Are both sides ready to proceed? You may proceed when you're ready. Your Honors, Counsel, and may it please the Court. My name is Jessica Parsons, and I represent the plaintiffs Catherine Durr, Kim Euslander, Corin Durr, James Durr, and Michael Durr. The plaintiffs respectfully ask that this Court reverse the orders of the trial court dismissing their case of prejudice and to remand to the trial court to proceed on the plaintiff's complaint. The central issue before the Court today is whether orders entered in prior proceedings known as Case No. 07-P41 barred the plaintiff's current case under the Doctrine of Res judicata. In support of the plaintiffs' position that their case is not barred, I will make the following three points. The first point is because the consolidation of the probate case and the litigation in the prior proceedings was done for the purpose of convenience of the judicial economy without merging both cases into a single suit, that any orders entered in the probate action had no bearing on the claims in the prior litigation action. Second, given the intervening facts of the removal of the defendant as trustee in 2013, and given that there was no judgment on the merits entered in the prior litigation action, by bringing the instant case now, the plaintiffs are not engaging in claims splitting. And finally, in the alternative, in the event that this Court does find that Res judicata applies, the instant case is not barred because three exceptions to Res judicata are present. Which brings me to my first point. In the instant case, the record clearly reflects that the two cases in the prior proceedings, the probate action and the litigation, were either consolidated or filed concurrently for convenience of judicial economy and not to merge both cases into the same suit. Res judicata prohibits splitting claims that are contained within a single lawsuit into multiple actions. When cases are consolidated, they can be consolidated in three ways. In one instance, there could be several actions with the same general subject matter. Proceedings may be stayed on most of the actions until a judgment is entered on one, in case that action would settle the matters in the other actions. Two, and most closely to what happened in the instant case, is to consolidate evidence on common issues for purposes of a joint trial. And three, merging several actions into one suit, and in that case, each action loses its individual identity and it's all considered one lawsuit. In Shannon v. Stuckey, our fifth district consolidated three cases arising out of oil and gas leases that were all operated by one of the defendants. In that case, two of the cases were lessees against the lesser for abandonment of the lease, and then in the third consolidated action, the lessor filed suit against the operator of the leases to appoint a receiver. And one of the lessees objected to the appointment of the receiver in that court. The Stuckey, the three actions herein took the second form. Being solely limited to an integration of evidence at a joint trial, such was only done for convenience and economy, and it did not merge the causes into a single suit. So more or less, the lessors, the lessees in the suit against the lessor could not object to the appointing of the receiver. And the third action against the operator of the leases because there were still three separate lawsuits they were not parties to. Whether they merged or not, did we or did we not have a final order in the, not the probate case, in the other case, the 07 case, wasn't there a final order in that pursuant to the settlement agreement? It was final, but it wasn't on the merits. And so in the case of a settlement agreement, under most circumstances, a settlement will constitute a final judgment on the merits, but it depends on the terms of the settlement and the terms of the agreed order. So in the instant case, and it was this court in Elliott v. LRSL Enterprises that stated that whether an agreed order dismisses a case with the merits is limited to the language of the order. And in Elliott, there was a lease between the... I'm familiar with the facts of Elliott, and I understand that the leasehold interest continued on. Therefore, they had a settlement agreement. The leasehold continued on. The lease agreement continued on. So later, you could have another lawsuit based upon what happened, you know, after that. But here, we have a settlement agreement, and the defendant stays on as trustee for a while, and there's a part of the agreement is to, that the court will maintain jurisdiction to enforce that agreement, correct? And then the defendant stays on as trustee for a little while. So anything that probably happened between the settlement agreement and 9-3 of 13, when she's removed as trustee, maybe that's right for some type of adjudication pursuant to Elliott, but I'm just trying to see where that fits into these facts. Okay, so in Elliott, this court stated that because the agreed order entered in that case didn't abrogate the lease, which stated that the tenant was responsible for rent even after termination of the tenancy, the tenant was arguing in that case that because they had come to this agreed order where he would pay back rent, that basically disposed of the lease. And the court said because the lease said that the tenant was still responsible for rent even after vacating the premises, and the order, the agreed order specifically also said that the tenancy was terminated, not the lease, then therefore, even after that agreed order was entered, the landlord was still able to bring a breach of contract action for the rent not paid even after he vacated the premises. In this case, the agreement says we are not going to release of all claims arising out of this matter until all covenants of this agreement are satisfied. Once that's done, we'll enter our stipulations and motion to dismiss with prejudice. And the orders in the incident case said, this case is dismissed pursuant to the terms of the settlement agreement. Settlement agreement says if either party doesn't comply with that agreement, then each party is free to release plans again. The allegation is that there is a term in the settlement agreement for which the defendant was supposed to provide accountings, full accountings, and it's clear that she did not, given that she was removed on that basis. Right, but I mean, she was to provide an accounting. She didn't have to provide an accounting after 9-3-13, right? I mean, she's removed then. I mean, I'm sorry, she does do a final accounting on 10-15-13, but that's her final accounting after she's removed as trustee. She's no longer the trustee, so she no longer has any duties to this trust. Right, but she was removed because the agreement stated that she was supposed to file the accounting, I believe, within 60 days and then every so often after that, and because she didn't do that, that's what resulted in her removal. Once she was removed, and then Catherine Dern, Ms. Euslander, took over as trustees, that is really when they could really determine the full extent of the injury to the trust approximately caused by the defendant's mismanagement. And without having an accounting prior to that, they couldn't really prove or the injury really couldn't have been determined in the prior case. Right, but I mean, this thing dragged on for enforcement proceedings after it was dismissed, I mean, after the settlement agreement was reached, correct? Well, after the settlement agreement was reached, okay, so there was confusion in the court below. My clients were of the understanding that the case was closed, but then I'm trying to remember exactly how this happened, but then there was a later court date in the probate proceedings and apparently neither counsel was aware of it, or my client and her counsel wasn't aware of it. The court had a proceeding in the probate. My client thought that since the case was closed, the litigation was over, that they were engaging in ex parte communications with the court, and then the court said, well, that's when I think that's when this January order came in saying what the order should have said in August was that the claims raised in the litigation should be dismissed prior to the terms of the agreement, reserving the issue of closing the estate. So then, so we were kind of dormant up until that point, and then when the defendant petitioned to close the estate, then my clients came back in and objected to that because they hadn't gotten any accountings of the estate. So then they petitioned to not just close the estate because there was nothing in there, and then granted the part of the petition to remove her as a trustee because she was failing to provide the accountings. And that was part of the, really the enforcement of the settlement, correct? Well, but the settlement still, so not really because the removal of the trustee, it's an equitable remedy, and it's not based on any of the evidence of the facts of the claims that were raised before. So it wasn't really enforcing the agreement, more kind of, I guess if we separate it, the petition was filed in the litigation to remove her because she was failing to comply with the agreement. But since the agreement specifically states not going to release until all these terms are satisfied, then by bringing a second suit is really how they're enforcing the terms of the agreement. This case was ultimately, I mean, the 07, everything was closed on November 27th and 13th, correct? Closed. The estate was closed. The litigation had already been dismissed without prejudice pursuant to the agreement. There was no without prejudice language in the order, but there was no with prejudice language either, except pursuant to the terms of the agreement. The agreement says, upon completion of the covenants in terms of this agreement, the parties will enter into a stipulation to dismiss and enter with prejudice. Right, which they didn't do. They just dismissed pursuant to the terms of the agreement. The agreement says if you don't comply, we can bring these claims later on. The agreement says, though, that the dismissal is with prejudice. It says if all the covenants are complied with, then we will enter a stipulation to dismiss and we will then dismiss the case with prejudice. And the case was dismissed. But not with prejudice. It was dismissed pursuant to the agreement. So there was a So realistically, then, the enforcement of this agreement could go on ad infinitum. I mean, you could raise this. There's no statute of limitations. There's no, based upon your reading of this, that until there's a absolute compliance by whoever's determination, this is still open, an open question. Well, no, I mean, then when you bring the claims, any other defense would apply, statute of limitations or whatever else. But it's just saying we have the right to bring the claims arising out of this if she doesn't comply. But then, you know, that doesn't mean they can just bring them whenever they want. It still has to fit in with our rules of procedure and our statutes. But it's just saying it's not, it's just saying that this agreement is not settling this once and for all. It's not disposing of everything. Just because they can bring the claims later, there's still all the other rules of procedure that go along with it. So if a statute does pass and they bring the claims, well, agreement or not, they're barred because it's just kind of an odd way of doing something, by having an agreement that says we're not going to be done with this agreement until everything's fulfilled, and then we'll dismiss the case. And then you dismiss the case, and they come back later and say the agreement wasn't fulfilled. I mean, it just seems like a very, why wouldn't you wait, why wouldn't they just wait until everything was fulfilled before they dismiss the case? Because at that point, they were running out of resources to litigate the case. They tried to mediate it, and they wanted to settle, but they still had loose ends to tie up, which the defendant wasn't doing. And agreeably, yes, it's a very interesting agreement. The trial court shares that same sentiment with you. I do as well, but that is what the parties agreed to. So for you, from your perspective, the difference and the distinction is there was a stipulation to dismiss, but there was not a stipulation to dismiss with prejudice, which is what the original agreement called for. In other words, if everything was complied with, it was to be a dismissal with prejudice. But here there was not full compliance, therefore a simple dismissal with apparently the belief that we could then file additional claims. Is that some of that? Sort of. So it was dismissed pursuant to the terms of the agreement. Dismissed, not with prejudice. Correct. Okay. And because it's dismissed pursuant to the terms of the agreement, like Elliot says, it's not abrogating the agreement. Therefore, the agreement says if you don't comply, we can bring this cause of action again. And just as in Elliot, where that agreed order did not dispose of the whole lease, which said that the tenant was still liable for rent, here, because of that caveat in the agreement, it's saying, like, this isn't disposing of everything completely unless this is complied with. And because the court order, you know, didn't say that this overrules or abrogates the agreement or anything like that, then that's why the agreement would permit them to bring this. Now, compliance, or lack thereof, would or should have been known by the new trustees sometime shortly after 10-15-13 in the final accountings. Because now, as of 9-3-13, you've got your clients, two of them, taking over as trustees, so they have access to everything. They have access to all the property. They have access to everything. Once the old trustee files the final accounting on 10-15-13, that's when your clients should have been aware of compliance or lack thereof, correct? That's when they began to notice, but also raised judicata bars not only what was raised and determined in the prior case, but also what could have been raised and determined. It took them years to figure out the full extent of the damage to the trust that arose out of what happened when the defendant was a trustee. They'd spent years fixing the house to sell, and it took years. No, no, no, years fixing the house is one thing. We're talking about when you know or should have known, or reasonably should have known, of the issues. I mean, they get the house on 9-3-13 where they're trustees. Right. I mean, you do a walkthrough, you find issues. I mean, I know there was something about a woodchuck they're burrowing underneath the foundation or something. I mean, that's something that I think you'd see on 9-3-13. Right, and as I said, they're starting to discover the effects of her breach. But if we're going to do a whole breach of fiduciary claim, two of the elements are the injury and the proximate cause. They were beginning to see the injuries, but to figure out the final impact, how much the trust lost. I mean, at the very latest, they wouldn't really know until after the house was sold. You will have an opportunity for a rebuttal, and thank you for answering the questions. Counsel. Thank you. May it please the Court. My name is Daniel Kevin Sommer. I go by my middle name, Kevin, and I represent the defendants, appellees in the case, Gwynne and Nicolette Weyer. What the case boils down to is whether there was a final judgment in the case on the merits. I don't think there's any question about that. I don't think it's disputed. So with regard to the final judgment, we have the order of dismissal that was entered on August 29, 2012, pursuant to the settlement agreement that was reached between the parties. And that settlement agreement was finally signed by the last party in July of 2012, after the parties had mediated sometime before that. It was around the spring of 2011. It was March 16, 2011, that the Court first referenced successful mediation. Again, March 16, 2011. By September 17, there had been a settlement release agreement drafted and finally executed. And it's important in interpreting the order of dismissal that the Court look at both the order itself, the language in the order, and the settlement and release. The order is an agreed order. It's an agreed dismissal. It's recited on the face of that August 29, 2012 order that the parties have agreed to a dismissal. Paragraph 1 of the order says that the litigation that was going on in the case be and is hereby dismissed. Now if you look... Counsel argues that that order is not final because by its term, the settlement agreement by its terms, allows for future action if there's noncompliance with the agreement. Do you agree with that? I agree that the order at paragraph 2 says that the Court reserves jurisdiction to enforce the terms and conditions of the order. Yes, that's clear. Does that make that order any less final or make that order not with prejudice, if you want to use those terms? No. It clearly was a final order with prejudice. When we look at the settlement and release agreement, the settlement and release agreement says that upon completion of all covenants, this is at paragraph 2, this is on the first page, dealing with dismissal of the litigation. Under paragraph 2, it says upon completion of all the covenants and agreements that are contained both within this agreement and which are contained in the memorandum of agreement, plaintiffs, defendants, and the minor child at the time, Nicolette Weyer, who was one of the beneficiaries she's mentioned specifically, shall dismiss with prejudice the litigation and cause an agreement to dismiss and cause an agreed order of dismissal to be delivered to the Court. So what are the plaintiffs, the appellant, what are they saying by agreeing to this order? Was there compliance with everything? In? Or completion? The appellants contend that there were some accountings due. My clients, in their reply to the plaintiff's response to the motion to dismiss, attached the accounting that was provided, that the appellant's claim was never provided. I understood her to say there were periodic accountings that were required, and that was not complied with, just a single final. And for the sake of argument, which I'm not admitting that, but assuming arguendo there was, the fact is that those issues should have been resolved in the case. If the appellants felt that there were items that had not been completed pursuant to the settlement agreement, they had the ability and, in fact, the duty and obligation to take care of those in the underlying action, not allow the underlying action to be finally closed out when the estate was closed in November of 2013, without raising these issues that they chose to wait some four years to raise, when they were all actions that clearly could have been brought under the previous action. Did they have sufficient knowledge to do that? They did have sufficient knowledge, and this Court needs to look no further than the face of the pleading itself. If you look at the face of the pleading, there are allegations contained in the face of the pleading that all talk about the time frame when the action was pending and facts that arose while the action was pending. There's nothing new that arose after November of 2017, excuse me, November of 2013, that the appellants didn't know about and had the ability to maintain their action. I think in the complaint, I've got to look it up, but I think the only thing that postdates that is some things having to do with the house and the condition of the house. I don't think any of the things about missing documents and missing property postdate that. What about the issues with the house? If anything postdated the house, it would have been items that arose at the time that the appellants were the trustees. But that, of course, was after the dismissal. Correct. So then your argument is that they should have taken that up in the enforcement proceeding that was ongoing after the dismissal? Correct. They certainly had an opportunity after they were appointed trustees to make a walk through the premises to determine if there was anything wrong at that time. And if they didn't notice anything wrong, then chances are it didn't have anything to do with my client. It would have been ordinary wear and tear to the property after the estate was closed, which my client wouldn't have had any responsibility for at that time anyway. It's beyond me how this case can be viewed as anything other than a case that warrants the application of res judicata. It appears to be a textbook case. The only issue, the only issue in dispute, is the finality of the judgment. And it's clear from the record that the order of dismissal was final. It reserved enforcement of that. There were opportunities galore to enforce it. There are a number of pleadings and orders that demonstrate efforts to enforce it. And by the time of the November 2013 order that finally closed the estate and discharged the executor, there wasn't anything raised with regard to that. And there were court appearances in September and October after the appellants were appointed trustees that gave them ample opportunity to raise any of these issues, and they did not, even though they could have, and even though they knew about them, or should have known, reasonably should have known about them. So with the final order closing the estate and discharging the executor, that ended the litigation. And that's final, as final as you can get. It was protracted, unpleasant litigation, and the trial court finally ended it and put it out of its misery, and I hate to see this court, nor is it justified, revive it. Thank you. Any other questions? Counsel, thank you very much for your argument. Thank you. Do you wish to reply? May I proceed? Yes, ma'am. Okay. So putting the arguments of the intervening facts and the consolidation of cases aside, there's three hard elements of res judicata, and one of those is whether there was a final judgment entered on the merits in the prior case. Finality is just part of it. Final adjudications on the merits consist of either a Rule 273 involuntary dismissal, except for those of lack of jurisdiction, improper venue, or failure to join a party, or a voluntary dismissal with prejudice, or, as we had already discussed extensively, an agreed order depending on the circumstances. And if a final order doesn't fit to any of those other categories, then a judgment on the merits, at the very least, is a complete determination of liability based on the ultimate facts disclosed upon which a right of recovery depends. So the order closing the estate, all that was was approving the report, discharging the executor. The court didn't hear any elements, any evidence on any claims that were raised against the defendant in the prior proceedings. But it could have heard any evidence if there were any claims that were raised, right? It could have, but it didn't. No, but part of res judicata is the opportunity to hear those claims that maybe weren't presented, right? Claims that could have been presented but weren't. Res judicata does bar that, right. That is part of res judicata. You had the opportunity to present claims. They weren't presented, so you're barred. That's one of the principles of it. But on top of that, you're not barred unless there's a final judgment on the merits in your prior case. And this type of case isn't necessarily similar to other types of cases when you have a final judgment on the merits. The final judgment in a probate case may be just closing the case. The estate is done. It's over and we're through. Right. Because on the merits, I mean, that's a suit, a dispute. Probate's just a different animal. I mean, you're just closing it. You're not determining the rights or liabilities of anybody. And regardless, as I said before, these cases are consolidated regardless of whether that order is on the merits or not. It's not like in a lot of the case laws stated where a plaintiff filed a lawsuit. I think in Hudson there was claims for negligence and willful amounts in conduct raised in an initial suit. Court dismisses one of them based on statutory immunity grounds. Involuntary dismissal. There's your final judgment on the merits on part of that particular lawsuit. Proceeds on the willful and wanton claim, but then voluntarily dismisses it, not pursuant to an agreement, but pursuant to Section 21009. Okay, so now the plaintiff has the right. So what the plaintiff did in that case is he brought his willful and wanton case again based on the exact same circumstances. And even though he had the right, absolute right, to refile that voluntary dismissal, he was still subject to the res judicata defense if it was raised. And because his willful and wanton claim in the second suit was basically, I mean, it's a separate action, but it was more or less the same lawsuit as before, same injuries, same facts. Because his negligence claim had already been dismissed and voluntarily dismissed in his prior lawsuit before he voluntarily dismissed it and refiled, that's what barred him from bringing the second because both of those claims were in the same suit and one of those claims had already been dismissed, involuntarily dismissed, which constituted a final judgment on the merits. And so even though there was no final judgment on the willful and wanton part, he was barred from bringing that given the final adjudication on the merits, entered on the negligence claim in the same suit, which had the willful and wanton claim as well. So, yes, even though the probate order was a final order by definition, it's not a final adjudication on the merits. Plus, may I conclude? Of course. It's not the same. Res judicata is to bar claim splitting. They're not trying to... It's to bar claim splitting. So the probate action was not merged into the prior lawsuit. So whether that final order closing the estate would be a judgment on the merits, which it's not, it didn't constitute a judgment on the merits of any of the claims in the litigation case that was filed along with it. Therefore, there was no final adjudication on the merits and all elements of res judicata have not been met. I just respectfully ask that this court reverse the judgment of the trial and remand to proceed on the complaint. Thank you. Thank you very much. Thank both counsel for excellent arguments this morning. And we are adjourned.